## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**GREGORY D. TRUETTE,**
     **Petitioner,**

**v.**                            **Case No.  5:10cv292/RS/MD**

**KENNETH S. TUCKER,**
     **Respondent.**

_____

## REPORT AND RECOMMENDATION

       This case is before the court on Gregory D. Truette's ("Mr. Truette") September 22, 2010 petition for habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has requested that this court dismiss the petition as time-barred (doc. 29).  Petitioner replied contending that because his appeal is based on newly discovered evidence, then respondent's argument is inadmissible (doc. 52, p. 5 and doc. 58).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition is untimely and should be dismissed.

## BACKGROUND AND PROCEDURAL HISTORY

On March 12, 1999, Mr. Truette was charged with cultivation of marijuana (doc. 53-1, pp. 6-9) and possession of a controlled substance (methamphetamine) in violation of Sections 893.13(1)(a) and 893.13(6)(a), Florida Statutes (doc. 53-2, p. 12) in the Circuit Court of Washington County, Florida in case number 99-51CF.  He pleaded no contest under a plea agreement, but reserved his right to appeal a suppression issue (doc. 53-2, pp. 16-22).  The state court withheld adjudication of guilt, and placed him on 2-year probation for both counts (doc. 53-2, pp. 35-36).

On August 21, 2000, Mr. Truette filed an appeal with the Florida First District Court of Appeal ("First DCA") as to the suppression issue (doc. 32-1, pp. 2-22).  On May 29, 2001, the First DCA affirmed *per curiam* the state court's decision with a specially concurring written opinion by Judge Browning (doc. 45-1, p. 8-17).

On December 8, 2000, Mr. Truette was arrested for possession of more than 20 grams of marijuana, cocaine, drug paraphernalia, and a .45 caliber pistol, case number 00-253CF in the Circuit Court of Washington County, Florida  (doc. 32-1, p. 39).  His probation officer issued a violation of probation report, and Mr. Truette admitted to this violation.  *Id.*  Therefore, on December 17, 2001, the state court revoked his sentence in case number 99-51CF, and sentenced him to 2 years in prison followed by 2 years probation.  *Id.*, doc. 32-1, pp. 36-37.  The state court then sentenced Mr. Truette in case number 00-253CF to 2 years in prison followed by 3 years probation to be served concurrently with the other sentence.  *Id.*

On May 10, 2004, Mr. Truette's probation officer issued an affidavit for violation of probation (doc. 32-1, pp. 38-50), which he later amended on August 18, 2004 (doc. 32-1, pp. 51-67).  Originally he attested that Mr. Truette had failed to pay for the cost of the supervision and had tested positive for methamphetamine in a urinalysis obtained on April 29, 2004 (doc. 32-1, p. 38).  The amended violation report added that Mr. Truette had been arrested on August 17, 2004 for possession of more

than 5 grams of methamphetamine packaged for sale, 3 guns and 29 homemade bombs (doc. 32-1, pp. 51-54; case 5:04cr55 MCR/WCS doc. 1).  It also included a violation for visiting a place were drugs are sold or used (doc. 32-1, p.52).

On May 3, 2005, the state court held a hearing for both cases 99-51CF and 00-253CF where Mr. Truette admitted all of the probation violations and requested the court to approve a plea settlement where he would be adjudicated guilty, sentenced to 2 years in prison with 356 days of credit, and for the sentence to run concurrently with his federal prison sentence,[1] which the court approved (doc. 33-1, pp. 6-12).

On February 25, 2007, Mr. Truette filed a motion to vacate, set aside or correct his sentence pursuant to Rule 3.850(a)(5), Florida Rules of Criminal Procedure, averring newly discovered evidence (doc. 57-1, pp 8-18).  He alleged that his guilty plea was involuntary, and wanted to have it withdrawn (doc. 57-1, p. 8).  Mr. Truette's former probation officer, Mr. Joe Canoi ("Mr. Canoi"), wrote an underlined undated letter to Mr. Truette, which prompted this motion (doc. 57-1, p. 14).  Mr. Truette alleged that pursuant to Mr. Canoi's letter urine samples had been improperly handled, and his sample could have been contaminated (doc. 57-1, pp. 8-9).  He argues that if he had known, he would not have agreed to the plea (doc.57-1, p. 11).  On June 15, 2009, the Rule 3.850 court held an evidentiary hearing, and Mr. Canoi testified as to whether there was actual tampering of Mr. Truette's urine sample (doc. 33-2, pp. 3-23).

Mr. Canoi characterized his work environment as possibly unsecured because the lock to the refrigerator where he kept the tested urine samples was nearby the door to his office (doc. 33-2, pp 9-10).  He also mentioned that Mr. Truette was familiar with the set up and procedure for urine analysis from first hand observation (doc. 33-2, p. 12).  Mr. Truette's cousin requested Mr. Canoi write the letter at issue describing the procedures to collect the urine analysis.  *Id*.

---

[1]On April 6, 2005, Mr. Truette was sentenced in his federal case to 540 months imprisonment, 8 years of supervised release, and $500 SMA pursuant to a plea agreement (5:04cr55 MCR/WCS docs. 16 and 24).

During cross-examination, Mr. Canoi admitted that there was no evidence that Mr. Truette's sample was tampered with, but that he merely said that it was a possibility (doc. 33-2, p. 13).  He also conceded that the urinalysis was not the only violation of probation, specifically referring to Mr. Truette's August 17, 2004 arrest (doc. 33-2, p. 14).  Mr. Canoi also confirmed that the violation for failure to pay cost of supervision was correct when it was issued even though Mr. Truette paid it after the fact (doc. 33-2, pp. 17-18).

The Rule 3.850 court then addressed Mr. Truette directly as to his testimony at the May 3, 2005 hearing where he admitted under oath all of the violations, including the urinalysis (doc. 33-2, pp. 19-21).  Mr. Truette responded that he "was going under advice of my counsel at that time."  *Id*. at 21.  He contended that his counsel told him to get the state case over with in order to have that state sentence run concurrently with the federal sentence.  *Id*.  The court pointed out to Mr. Truette that at that time he had already pleaded to the federal charges, and Mr. Truette acknowledged that.  *Id*.  The court then questioned Mr. Canoi directly, who confirmed that he watched Mr. Truette provide the urine sample and do the presumptive stick test that indicated positive, which is why he had to send it off to the laboratory for confirmation (doc. 33-2, pp. 22-23).  Mr. Canoi denied to the court that there was any tampering with Mr. Truette's urine sample (doc. 33-2, p. 23).

The Rule 3.850 court explained to Mr. Truette that even if the original valid arrest warrant issued based on his positive presumptive urinalysis test and failure to pay supervision costs were to be thrown out, anything found in his possession and his premises would not be thrown out under "fruit of the poisonous tree" because the officers had legal authority to be there and conduct the search (doc. 33-2, pp. 24-25).  The court explicitly held that the search was proper and the warrant was valid (doc. 33-2, p. 26).  The court denied the motion because there was no testimony that would indicate a probability that the urinalysis was tampered with as adduced from Mr. Canoi's testimony regarding the presumptive positive test, and

that even if there had been any contamination, that would not invalidate the otherwise valid warrant issued after confirmation by the laboratory (doc. 33-2, pp. 26-28).

The Rule 3.850 court issued a written order on July 1, 2009 denying Mr. Truette's motion because: (1) the unlikely possibility of the urine sample being mistaken, exchanged or contaminated given the testimony of the probation officer that the test yielded a positive result in his presence, (2) the arrest warrant was valid and at the time Mr. Truette was found to be in possession of controlled substances, and (3) in addition to the urinalysis, the new charges and technical violations served as additional basis for violation (doc. 18, pp. 10-11).  On March 5, 2010, Mr. Truette appealed to the First DCA (doc. 33-2, pp. 33-44), which on June 10, 2010 issued a *per curiam* opinion affirming the state court's denial of his motion for post-conviction relief (doc. 18, p. 12).  Mandate issued on August 4, 2010 (doc. 33-2, p. 58).  On August 2, 2010, the Supreme Court of Florida dismissed Mr. Truette's appeal due to lack of jurisdiction (doc. 1, p. 22).

Petitioner filed the instant petition for federal writ of habeas corpus on September 13, 2010 (doc. 1), later amended on December 10, 2010 (doc. 18).

## DISCUSSION

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  A person in custody pursuant to a state court judgment must file a federal habeas corpus petition within one year from the latest of:

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

**(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or**

**(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.**

28 U.S.C. § 2244(d)(1).  "A judgment becomes 'final' on the date on which the United States Supreme Court issues a decision on the merits of the petitioner's direct appeal or denies certiorari, or after the expiration of the ninety days in which the petitioner could file such a petition."  *Ilarion v. Crosby*, 179 Fed. Appx. 653, *1 (11th Cir. 2006) (citing *Bond v. Moore*, 309 F.3d 770, 773-74 (11th Cir.2002)).  According to the tolling provision of § 2244(d), the time during which a "properly filed" application for state postconviction or other collateral review is pending shall not count toward any period of limitation.  28 U.S.C. § 2244(d)(2).  The time during which a belated appeal of an order denying post-conviction relief is pending also tolls the limitations period.  *Moore*, 321 F.3d at 1381.

The Eleventh Circuit has held that the "AEDPA's statute of limitations begins to run from the date both the conviction *and* the sentence the petitioner is serving at the time he files his application become final because judgment is based on both the conviction and the sentence."  *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1293 (11th Cir. 2007) (relying on *Burton v. Stewart*, 549 U.S. 147, 127 S. Ct. 793, 166 L. Ed. 2d 628 (2007)); *see also Ferreira*, 494 F.3d at 1292 ("the judgment to which [section 2254(a)] refers is the underlying conviction and *most recent sentence* that authorizes the petitioner's current detention") (emphasis added).  Thus, if a petitioner is re-sentenced, then his AEDPA statute of limitations would reset on expiration of the opportunity for direct review of the new or amended judgment re-sentencing him.

Section 948.06, Florida Statutes, governing violation of probation, does not use the term "re-sentence."  It states in relevant part:

> **(e) After such hearing, the court may revoke, modify, or continue the probation or community control or place the probationer into community control. If such probation or community control is revoked, the court shall adjudge the probationer or offender guilty of the offense charged and proven or admitted, unless he or she has previously been adjudged guilty, and impose any sentence which it might have originally imposed before placing the probationer or offender on probation or into community control.**

Fla. Stat. § 948.06(e).  However, some Florida courts use the term "re-sentence" instead of "sentence" to describe a defendant's new sentence after a violation of probation.  *See, e.g.*, *State of Florida v. Payne*, 404 So.2d 1055, 1056 (Fla. 1981) ("one who has been sentenced to a period of incarceration and then given a period of probation may, upon revocation of his probation, be re-sentenced to any term which might originally have been imposed"),  *Smith v. State of Florida*, 637 So.2d 84 (Fla. 5th DCA 1994) ("The court, upon finding the violation to have occurred, revoked the probation imposed for each count and resentenced appellant on each charge.").

Mr. Truette pleaded guilty to the probation violations and was sentenced on May 3, 2005 (doc. 33-1, pp. 6-12).  He did not move for rehearing, or appeal to the First DCA[2].  Accordingly, his conviction became "final" for purposes of § 2244 on June 2, 2005, thirty days later.  Fla.R.App.P. Rule 9.140(b)(3).  The federal habeas statute of limitations began to run on that date.  *See* 28 U.S.C. § 2244(d)(1).

---

[2] It is questionable whether Mr. Truette could appeal his sentence because he admitted to all of the probation violations, pleaded guilty, and did not expressly reserve the right to appeal his sentence (doc. 33-1, pp. 6-12).  *See* Florida Statutes Section 924.051(4):

> If a defendant pleads nolo contendere without expressly reserving the right to appeal a legally dispositive issue, or if a defendant pleads guilty without expressly reserving the right to appeal a legally dispositive issue, the defendant may not appeal the judgment or sentence.

*See also* Florida Statutes Section 924.06(3):

> A defendant who pleads guilty with no express reservation of the right to appeal a legally dispositive issue, or a defendant who pleads nolo contendere with no express reservation of the right to appeal a legally dispositive issue, shall have no right to a direct appeal.

However, for arguments sake, the court will analyze the statute of limitations as if he would have been able to appeal to the First DCA because the conclusion is the same.

Therefore, in order to be timely, Mr. Truette had to file his federal habeas petition by June 2, 2006.  The instant petition, which was filed well after that date, is untimely.  *See McCloud v. Hooks*, 560 F.3d 1223, 1229 (11th Cir. 2009) (calculating expiration of limitations period as one year from the date after the judgment became "final" under § 2244(d)(1)); *Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1331 (11th Cir. 2008) (same).

Mr. Truette filed his Rule 3.850 motion 268 days later, on February 25, 2007 (doc. 57-1, pp 8-18).  This properly filed motion could not toll the statue of limitations because his one-year statute of limitations had already expired.  28 U.S.C. § 2244(d).  Mr. Truette asserts that because his Rule 3.850 motion and the instant petition are based on newly discovered evidence (docs. 52 and 58).  He further contends that he initiated this petition within the one year time limit since exhausting the avenues of relief with the Florida Supreme Court.  *Id.*  He then avers that respondent's time-barred argument is inadmissible because it was not raised in the state proceedings.  *Id.*

Section 2244(d) is subject to equitable tolling.  *Holland v. Florida*, __ U.S. __, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010).  A petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Id.* at 2562-63 (citation and internal quotation marks omitted).  Equitable tolling is an extraordinary remedy to be applied sparingly, and the petitioner has the burden of establishing he is entitled to it.  *Drew v. Fla. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002).  Recently, the United States Supreme Court clarified that counsels' failure to inform petitioner or the court that they no longer would represent petitioner, while letting the time to file a notice to appeal lapse, constituted cause to excuse petitioner's procedural default.  *Maples v. Thomas*, __ U.S. __, 132 S.Ct. 912 (2012).

Mr. Truette has not alleged sufficient facts to entitle him to equitable tolling.  The alleged newly discovered evidence constitutes a vague undated letter from his

former probation officer requested by Mr. Truette's cousin.  Nothing in the letter or in the testimony by Mr. Canoi during the Rule 3.850 evidentiary hearing demonstrated any violation of Mr. Truette's rights.  It certainly did not provide him with new information so as to excuse his delay in filing the instant petition.  Mr. Canoi testified that Mr. Truette was familiar with the set up and procedures of the urinalysis samples.  Mr. Truette did not engage in due diligence.  Nothing in the letter established tampering with Mr. Truette's urine sample, which tested positive in the presence of Mr. Canoi.  In fact, the testimony by Mr. Canoi refuted those assertions. Mr. Truette has the burden of establishing he is entitled to equitable tolling, and based on the pleadings, this court finds that he failed to meet that burden.

Mr. Truette's other two arguments are meritless because he only appealed the denial of post-conviction relief to the Florida Supreme Court, and not his original sentence, which is what triggered the running of the federal statute of limitations. Also, the statute of limitations for his state proceedings differ from those of this federal habeas proceeding, which is why respondent could raise the time-barred issue here and not in state court.

## CONCLUSION

The instant petition for writ of habeas corpus is untimely.  Petitioner has not established entitlement to equitable tolling or any other exception to the limitations period.  Therefore, respondent's motion to dismiss (doc. 29) should be granted, and the petition should be dismissed.

## CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases.  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is recommended that the court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If petitioner files an objection to this recommendation, he may bring this argument to the attention of the district judge in his objections.

Accordingly, it is respectfully RECOMMENDED:

1.  That respondent's motion to dismiss (doc. 29) be GRANTED.

2.  That the petition for writ of habeas corpus (doc. 1), later amended (doc. 18) challenging the conviction and sentence in *State of Florida v. Gregory D. Truette*, in the Circuit Court of Washington County, Florida, case numbers 99-51CF and 00-253CF, be DISMISSED WITH PREJUDICE.

3.  That the clerk be directed to close the file.

4.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 1st day of March, 2012.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**